**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Federal Deposit Insurance Corporation as Receiver for Community Bank of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>Edward M. Jamison; Stephen R. Curley; James E. Nelson; LeRoy R. Aman; Leanne B. Appledorn-March; Richard L. Murphy; and Phillip B. Whitaker,<br><br>Defendants. | No. CV-12-1508-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Before the Court are Defendants' motions to dismiss. (Docs. 29, 30, 32.) Plaintiff Federal Deposit Insurance Corporation (FDIC) as receiver for Community Bank of Arizona (CBOA) has responded (Doc. 38), Defendants have replied (Docs. 45, 46, 47), and the matter is fully briefed. After reviewing the briefs, and having determined that oral argument is unnecessary,[1] the Court will deny Defendants' motions.

## BACKGROUND

Plaintiff brings this suit in its capacity as receiver for CBOA, against seven former officers and directors of CBOA (collectively "Defendants"): Edward M. Jamison, Stephen R. Curley, and James E. Nelson (collectively "Inside Director Defendants"); and LeRoy R.

---

[1] The parties' request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

Aman, Leanne B. Appledorn-March, Richard L. Murphy, and Phillip B. Whitaker (collectively "Outside Director Defendants"). (Doc. 1.) Plaintiff alleges three claims for relief: (1) Negligence against Inside Director Defendants; (2) Gross Negligence against all Defendants; and (3) Breach of Fiduciary Duties against all Defendants. (Id. at 20-24.) Plaintiff prays for relief in the form of "damages, jointly and severally, of at least $11 million, and any excess amount to be proven at trial." (Id. at 24.)

Plaintiff's Complaint alleges the following facts:

Defendant Jamison was CBOA's President from approximately July 17, 2007 until approximately January 17, 2008. (Id. ¶ 8.) He also acted as Chief Executive Officer ("CEO") from approximately July 17, 2007, and Chairman of the Board of Directors from approximately October 10, 2007, until CBOA failed in August of 2009. (Id.) Jamison was also Chairman and CEO of both CBOA's larger "sister bank" Community Bank of Nevada ("CBON"), and Community Bancorp, Inc., the common holding company for CBOA and CBON. (Id.) Defendant Curley was President and a director of CBOA from approximately January 17, 2008 until CBOA failed in August of 2009. (Id. ¶ 9.) Defendant Nelson was Chief Credit Officer ("CCO") and a director of CBOA from approximately December 11, 2006 to approximately November 21, 2008. (Id. ¶ 10.)

Defendant Aman was a director of CBOA from approximately May 19, 2004 to July 21, 2009. (Id. ¶ 11.) Defendant Appledorn-March was a director from approximately May 19, 2004 until approximately July 21, 2009. (Id. ¶ 12.) Defendant Murphy was a director from approximately June 26, 2007 until approximately July 21, 2009. (Id. ¶ 13.) Defendant Whitaker was a director from approximately April 17, 2007 until approximately July 21, 2009. (Id. ¶ 14.)

CBOA had specific written policies and procedures governing the acquisition, administration, and underwriting of loans. (Id. ¶ 19.) This loan policy included several related requirements, including but not limited to the following:

(a) CBOA could purchase loans from other banks only if the loans met all underwriting and policy requirements for CBOA.

(b) CBOA could purchase loans from other banks if CBOA "conducted its own independent analysis of the financial statements and other aspects of the credit."

(c) New real estate loans larger than $250,000 required a current appraisal. Appraisals would be current if less than 12 months old and local market conditions remained materially unchanged during that 12-month period.

(d) Commercial loans required a financial analysis covering at least two years, including all significant financial information on the borrowers and guarantors based on current financial statements.

(e) Financial statements over 12 months old would be considered stale.

(f) Financial statements were required to be audited or accompanied by tax returns for verification.

(g) A CBOA loan officer had to conduct a site inspection for any loan secured by real estate.

(Id. ¶ 19.)

Defendants managed CBOA irresponsibly and took unreasonable risks with CBOA's assets in violation of COBA's own policies and procedures when approving the acquisition of loans, ignored warnings concerning CBOA's risky real-estate and construction loans, and knowingly permitted poor or no underwriting on loans. (Id. ¶ 2.) Each of Defendants affirmatively approved of the acquisition of an interest in one or more of six specifically identified loans in their capacities as voting members of CBOA's Board Loan Committee ("BLC"), and these approvals were negligent, grossly negligent, and in breach of Defendants' fiduciary duties to CBOA. (Id. ¶ 3.)

Defendants approved the purchase of interests in numerous loans without having CBOA conduct any independent underwriting of the loans. (Id. ¶ 4.) Moreover, many of these loans were at or close to CBOA's legal lending limit, and Defendants improperly approved these purchases based on old or inadequate underwriting by other banks, most notably CBON, which also failed and went into receivership the same day as CBOA. (Id.)

Defendants either actively encouraged, or did nothing to stop CBON from exploiting its relationship with CBOA to improve CBON's loan portfolio at CBOA's expense. (Id.)

During the six-month period in which Defendant Jamison was President of CBOA, the bank purchased over approximately $34 million worth of participation loans from CBON, where Jamison was also Chairman and CEO of the board. (Id. ¶ 23.) Approximately 75 percent of the loan participations purchased from CBON during Defendant Jamison's presidency became problem loans for CBOA by the time of its failure. (Id.) Defendant Jamison's stated reason for directing CBOA's purchase of these loan participations from CBON was to lower CBON's high concentration of Commercial Real Estate ("CRE") loans while providing additional revenue for CBOA. (Id. ¶ 24.) The Defendants who approved these purchases therefore breached their fiduciary duties to CBOA by allowing it to serve as a repository for CBON's problem assets, which they did without conducting basic underwriting and due-diligence required by sound banking practices, banking regulations, and CBOA's own loan policy. (Id.)

Plaintiff then details six specific loan purchases that it alleges are examples of the Defendants' negligence, gross negligence, and violation of fiduciary duties. (Id. at 11-20.) As illustration, the Court will briefly recount some of the pertinent allegations from three of these examples, by which Plaintiff specifically alleges facts showing Defendants' gross negligence and breach of fiduciary duties:

(1) In December of 2007, Defendants Jamison, Nelson, Appledorn-March, and Murphy through CBOA's BLC approved the purchase from CBON of a $3.5 million participation in a loan. (Id. ¶¶ 38-39.) This acquisition violated the bank's loan policy in that the BLC required no independent underwriting to be performed, and relied on an appraisal for the collateral property that was more than two years old and financial information that was over one year old. (Id. ¶ 40.) The BLC conducted no independent verification of the financial statements, and conducted no independent onsite inspection of the construction project which was the primary repayment source for the loan. (Id.) If the approving Defendants had discharged their fiduciary duties and not negligently approved this loan, they

- 4 -

would have discovered the loan's weaknesses before purchasing and CBOA would not have been damaged by the loan's subsequent failure. (Id.)

(2) Another $3.5 million participation was purchased from CBON in December of 2007, approved of by Defendants Jamison, Nelson, Aman, Appledorn-March, and Murphy through CBOA's BLC. (Id. ¶ 44.) This loan participation was similarly "rubber-stamped" by these Defendants without any independent underwriting, appraisal, or updated financial information. (Id. ¶ 45.) This acquisition too would not have been approved had these Defendants followed sound banking practices and CBOA's own loan policy, and the subsequent and unsurprising failure of the loan caused damage to CBOA. (Id. ¶¶ 46-47.)

(3) In February of 2007, Defendants Jamison, Curley, Nelson, Aman, and Whitaker approved the purchase of a $1.7 million loan from First National Bank, secured by a property in Bullhead City, Arizona. (Id. ¶¶ 53-54.) By making this acquisition, the BLC violated sound banking practices and CBOA's own loan policy by failing to require independent underwriting of the loan, and failing to complete up-to-date and independent appraisal of the property or the financial statements. (Id. ¶ 55.) CBOA would not have made this acquisition if these Defendants had discharged their duties, in that a current appraisal of the property would have shown a loss in value, and that the loan could likely not be paid off. (Id. ¶ 57.) Because of the subsequent and unsurprising failure of this loan, CBOA suffered damage. (Id. ¶ 58.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the plaintiff must simply allege facts sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In evaluating a motion to dismiss, "all

1  well-pleaded allegations of material fact are taken as true and construed in a light most
2  favorable to the nonmoving party." Wyler Summit Partnership v. Turner Broad. Sys. Inc.,
3  135 F.3d 658, 661 (9th Cir. 1998).

4  However, "the court [is not] required to accept as true allegations that are merely
5  conclusory, unwarranted deductions of fact, or unreasonable inferences." Spreewell v.
6  Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Likewise, "a formulaic recitation
7  of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Dismissal
8  under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence
9  of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police
10 Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Affirmative defenses may support dismissal under
11 Rule 12(b)(6) FED.R.CIV.P. only where a pleader concedes the defense on the face of the
12 complaint, or "the allegations in the complaint suffice to establish that ground." Jones v.
13 Bock, 549 U.S. 199, 215 (2007).

14 In Arizona, directors of a corporation owe a fiduciary duty to the corporation, which
15 is "in the nature of a trust relationship requiring a high degree of care on the part of the
16 director . . . [A] director does not breach his fiduciary duty so long as he acts honestly and
17 in good faith and breaches no specific duty owing to the corporation . . . ." Resolution Trust
18 Corp. v. Dean, 854 F. Supp. 626, 643-44 (D. Ariz. 1994) (quoting Master Records, Inc. v.
19 Backman, 133 Ariz. 494, 497, 652 P.2d 1017, 1020 (1982)). Arizona law imposes upon
20 directors both a duty of care, and a duty of loyalty. See, e.g., AMERCO v. Shoen, 184 Ariz.
21 150, 157, 907 P.2d 536, 543 (App. 1995).

22 The business judgment rule requires a showing of gross negligence before liability
23 may be imposed – but "where an act is outside the business judgment rule, that is, where a
24 director acts outside of his role, simple negligence is the appropriate standard." F.D.I.C. v.
25 Jackson, 133 F.3d 694, 699 (9th Cir. 1998) (citing Dean, 854 F. Supp. at 635-36). The
26 business judgment rule presumes that "in making a business decision the directors of a
27 corporation acted on an informed basis, in good faith and in the honest belief that the action
28 taken was in the best interest of the company." United Dairymen of Arizona v. Schugg, 212

Ariz. 133, 140, 128 P.3d 756, 763 (App. 2006) (quoting Blumenthal v. Teets, 155 Ariz. 123, 128, 745 P.2d 181, 186 (App. 1987)). Thus, "[t]o invoke the business judgment rule's protection, directors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them." Dean, 854 F. Supp. at 636. Moreover, if there is a showing that a director has a personal interest in a transaction, the business judgment rule does not apply, and a director is personally interested if he appears on both sides of the transaction. Dean, 854 F. Supp. at 644.

To establish a claim for negligence, a plaintiff must prove the existence of a duty of the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. Brookover v. Roberts Enterprises, Inc., 215 Ariz. 52, 55, 156 P.3d 1157, 1160 (App. 2007). Gross negligence "differs from ordinary negligence only in degree, and not in kind." Dean, 854 F. Supp at 639. Whether a director's conduct rises to the level of gross negligence is a question of fact for the jury, and will not be subject to a motion to dismiss unless the plaintiff has introduced no evidence by which a jury could find gross negligence. Dean, 854 F. Supp. at 638 (citing Walls v. Arizona Dept. of Public Safety, 170 Ariz. 591, 595, 826 P.2d 1217, 1221 (App. 1991).

**DISCUSSION**

Defendants urge the Court to dismiss Plaintiff's claims against them with prejudice under Rule 12(b)(6), FED.R.CIV.P. (Docs. 29, 30, 32.) Defendants all contend that these counts fail to state a claim upon which relief can be granted, on the grounds that Arizona's Business Judgment Rule precludes liability, that Plaintiff fails to allege facts sufficient for its claims of negligence, gross negligence, or breach of fiduciary duty, and that they cannot be held jointly and severally liable.

The Court disagrees with Defendants that Plaintiff's claims are insufficiently pled under Rule 12(b)(6), and finds that Plaintiff has successfully pled all the required elements of breach of fiduciary duty, negligence, and gross negligence under Arizona law. As recited above, Plaintiff alleges a wealth of specific factual instances of Defendants' breach of their duties of care and loyalty to CBOA, and their gross negligence in directing the bank.

1 Plaintiff alleges that Defendant Jamison breached his duty of loyalty by using CBOA as a
2 repository for CBON's problem loans; Plaintiff alleges also that all Defendants breached
3 their fiduciary duty of care by disregarding FDIC and economic warnings and failing to
4 perform any underwriting or independent investigation of numerous risky CRE loans in
5 violation of sound business practices and CBOA's own loan policies.

6 When ruling on a motion pursuant to 12(b)(6), the Court must take all well-pled
7 allegations as true, and make all reasonable inferences therefrom – and it is entirely
8 reasonable to infer that, if true, Defendants' failure to perform even cursory underwriting on
9 numerous obviously risky CRE loans from CBON and other sources constituted breach of
10 their fiduciary duties, negligence, and gross negligence resulting in the failure of CBOA and
11 giving rise to liability. Therefore, in all three of its claims against Defendants, Plaintiff has
12 fully satisfied the requirements of Rule 12(b)(6) by "plead[ing] factual content that allows
13 the court to draw the reasonable inference that the defendant is liable for the misconduct
14 alleged." Iqbal, 556 U.S. at 678.

15 Defendants' argument that Plaintiff's Complaint must be dismissed pursuant to the
16 Business Judgment Rule is similarly without merit. Plaintiff has alleged sufficient facts in
17 support of its claim for gross negligence against all Defendants, and the business judgment
18 rule will not protect directors from liability in the case of gross negligence. Jackson, 133
19 F.3d at 699. Similarly, the Rule presumes that in making a business decision the directors
20 of a corporation "acted on an informed basis," see United Dairymen of Arizona v. Schugg,
21 212 Ariz. at 140, and directors have a duty to inform themselves prior to making a business
22 decision "of all material information reasonably available to them." Dean, 854 F. Supp. at
23 636. Plaintiff has sufficiently pled facts which, if true, show that Defendants failed to inform
24 themselves prior to making certain business decisions, and as such Defendants' cannot shield
25 themselves with the Business Judgment Rule at this early stage. Consequently, Defendants'
26 motions to dismiss these claims on the basis of business judgment will be denied.

27 Defendants also argue that Plaintiff's complaint fails to sufficiently plead facts by
28 which Defendants would be subject to joint and several liability, and thus that the Court must

deny that potential relief at this early stage. Under Arizona law, however, defendants may be held jointly and severally liable where they act in concert, such that they enter into a "conscious agreement to pursue a common plan or design to commit an intentional tort and actively tak[e] part in that intentional tort." ARIZ. REV. STAT. § 12-2506(D)(1), (E). Here, Plaintiff has sufficiently pled facts in support of its contention that Defendants engaged in a conscious agreement to commit the intentional tort of breach of fiduciary duty in their plan to "rubber stamp" risky loans, and the Court cannot say at this preliminary stage that Plaintiff will be unable to establish those facts after full discovery. Thus, Defendants' motion to dismiss Plaintiff's claim for joint and several liability is premature, and must be denied.

As a final matter, Outside Director Defendants additionally move the Court to strike Plaintiff's Complaint arguing that the Complaint was improperly filed prior to Plaintiff's counsel having secured *pro hoc vice* admission to this Court. (Doc. 29 at 13-14.) Defendants' contention is without merit. Plaintiff's counsel filed the Complaint on July 13, 2012, and properly moved for admission *pro hac vice* only a handful of days later on July 19, 2012, which motion was promptly granted by the Court pursuant to General Order 09-08. (Doc. 7.) Defendants fail to cite to any authority in support of the extreme position that the Court should take the drastic measure of striking the Complaint on this mere technicality, and the Court finds no basis for concluding that the Complaint was improperly filed.

**CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED denying** Defendants' motions to dismiss. (Docs. 29, 30, 32.)

**IT IS FURTHER ORDERED** that all Defendants shall Answer the Complaint no later than fourteen (14) days from the date of this Order.

DATED this 29th day of March, 2013.

Stephen M. McNamee
Senior United States District Judge